STATE of Missouri ex rel. Ervin W. NEALY and Edna Nealy, his wife, Plaintiffs-Respondents,

v.

Pidge COLE, Elmer Finke, Lucien Gallais, John Grossheider and James J. Steckman, Constituting all the members of the Board of Adjustment of the City of Ferguson, Missouri, Defendants-Appellants.

No. 33291.

St. Louis Court of Appeals.

Missouri.

May 20, 1969.

Carleno & Nick, A. E. Nick, Ferguson, for defendants-appellants.

Flynn, Parker & Badaracco, Norman C. Parker, St. Louis, for plaintiffs-respondents.

SMITH, Commissioner.

This matter reaches us on appeal from a judgment of the Circuit Court reversing a decision of the Board of Adjustment of the City of Ferguson (hereinafter Board) and ordering the Board to instruct the Director of Public Works (hereinafter Director) to issue permits to plaintiffs-respondents for demolition and building. The judgment further temporarily enjoined defendants-appellants from preventing, obstructing or in any way interfering with plaintiffs moving a wall of their building to a new right-of-way line and repairing said building. The action of the Board was purportedly based upon the Zoning Ordinance of the City of Ferguson. We affirm the Circuit Court.

The building involved is located at #1 Airport Road in Ferguson, and is located on an irregularly. shaped tract of land, fronting on the north line of Airport Road. The property was acquired in 1945 by Porter Moore and his wife, plaintiffs' grantors, and was improved by them in 1946, with a one-story brick and concrete block building irregularly shaped, used as a combination confectionery and the Moore's residence. The residential use continued uninterrupted while the Moores owned the property although at some time, unclear from the record, the remainder of the building was used for office space. At the·time of the erection of the building it complied in all respects with the Ferguson zoning law. In 1958 Ferguson amended its zoning law to require a 70 foot set-back from the centerline of Airport Road. The building was substantially less than that distance back from the centerline. In 1965, Ferguson adopted a comprehensive new zoning code, which again established the district in which the building was located as commercial and again provided for the 70 foot set-back line. The *use* of the property has at all times been in conformity with the *use* requirements of the district in which it is located. Since 1958, however, it has not been in conformity with the set-back requirements.

Section 32–25 of the 1965 Ordinance upon which the Board predicated its action provides in part: " * * * d. (1) * *

No part of any structure or building hereafter constructed, erected, reconstructed, or converted which is fronting or siding upon the following streets shall be built, erected or placed nearer to the center of the following described streets than hereafter noted: * * * g. Airport Road between Florissant Road and the western city limits—70 feet."

In September 1966, St. Louis County enacted an ordinance widening Airport Road and providing for acquisition of the required property by eminent domain. A condemnation suit was filed which included a *portion* of the Moore property and building. The portion included in the easement sought by the County was essentially triangular in shape, fronting on Airport Road, and having a depth of zero feet on the east and 26.43 feet on the west. This land contained the front portion of the building to a depth of 5 feet on the east and 12 feet on the west of the building. As filed, the condemnation petition also requested a temporary demolition and backfill license to demolish and remove the existing improvements on the parcel and to backfill to adjoining ground level. We will assume that the condemnation petition contemplated the total destruction of the building.

By general warranty deed, showing consideration of $17,500.00, the Moores, on November 21, 1967, conveyed to St. Louis County the triangular piece of property described in the condemnation petition. The deed conveys a fee, not an easement, and does not refer to or include any demolition or backfill license. On the same day, by general warranty deed showing consideration of $4000.00, the Moores conveyed the remainder of the parcel to the plaintiffs. On December 21, 1967, the County, by interlineation, amended its condemnation petition to eliminate therefrom any reference to the Moores or to the property conveyed by them to the County and to plaintiffs. The amendment also deleted the request for demolition and backfill licenses as to the property. The legal effect of the amendment was to dismiss the condemnation suit as to the parcel of land previously owned by the Moores.

Thereafter, plaintiffs applied to the Director for a permit to demolish that portion of the building on the property of St. Louis County and for a building permit to construct a wall at or near the new right-of-way line to preserve the remaining portion of the building for office purposes, a use permitted under the zoning ordinance. The new wall would be no closer to the centerline of Airport Road than the prior wall. Upon refusal by the Director to issue the permits plaintiffs appealed to the Board as provided in the zoning ordinance. The Board upheld the Director on the basis that granting the permits would violate the provisions of Sec. 32–25 of the zoning ordinance. Plaintiffs timely filed their petition for certiorari in the Circuit Court to test the legality of the Board's action and also sought the temporary injunctive relief given by the Court and heretofore described. From the judgment of the Court in favor of plaintiffs the Board appeals.

The parties agree that the total distance from the centerline of the widened Airport Road to the back of plaintiffs' property on the east is approximately 67 feet and that no building can be placed on the land and comply with the 70 foot set-back requirement. It is also clear that the former *use* of the property by the Moores and the proposed *use* by plaintiffs conforms to the *use* provisions of the zoning ordinance. No question has been raised in this court concerning the procedural steps occurring below.

Appellants based their claim of error upon two grounds, (1) respondents had the burden of proof of showing facts which would invalidate the action of the Board or the Director and (2) the review in the Circuit Court is not a trial de novo, and the Court may only correct illegality not

substitute its judgment for that of the Board. These statements correctly state the rule for review of decisions of zoning boards. State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030 [5, 6]; Brown v. Beuc, Mo.App., 384 S.W.2d 845 [1–3]. But application of those rules does not determine this case. We are not confronted here with factual determinations by the Board, or with the exercise of discretion by the Board, to both of which the Courts must defer, unless arbitrary and unreasonable. The minutes of the Board meeting at which the plaintiffs' appeal was determined state: "Mr. Grossheider made a motion, which was seconded by Mr. Gallais to uphold the decision of the Director of Public Works to deny the request of Mr. Ervin Nealy for a demolition and building permit for Lot 1 Machir Subdivision, #1 Airport Road, *because structural change would be in violation of the front yard requirement as set out in Section 32–25 of the Zoning Ordinance.*" 1 (Emphasis supplied.)

■ The only determination made by the Board was that plaintiffs' proposal was a violation of the ordinance. This is a determination of law, not of fact, and its correctness determines the legality of the Board's decision. If that determination is incorrect the action of the Board is illegal and such action may be corrected by the Courts. The Board has no legislative power. It cannot amend, modify or change the Zoning Ordinance. State ex rel. Nigro v. Kansas City, supra, [1–4]; Brown v. Beuc, supra, [5, 6]. Its jurisdiction is limited by the ordinance to correction of errors by administrative officers, granting variations where exceptional conditions unusual to the particular parcel of land create undue hardship on the landowner if strict application of the regulations were required, and the permitting of exceptions in certain specified instances again involving unusual conditions peculiar to a given parcel.

■ Both parties treat the building of plaintiffs as a "non-conforming use" because it does not comply with the set-back requirements. It is clear that in this State a comprehensive zoning ordinance must permit the continuation of non-conforming uses in existence at the time of the enactment of the ordinance in order to avoid violation of constitutional provisions preventing the taking of private property without compensation. Hoffmann v. Kinealy, Mo., 389 S.W.2d 745. The ordinance before us, in recognition of this requirement provides, in Section 32–21, for such continuation. We are concerned with only two paragraphs of that section which read as follows:

"The lawful use of a building existing at the time of adoption of this chapter may be continued, although such use does not conform with the provisions of this chapter, and such use may be extended throughout the building; providing, that no structural alterations except those required by law or ordinance are made therein. If no structural alterations are made, a non-conforming use of a building may be changed to another non-conforming use of the same or more restricted classification. The foregoing provisions shall also apply to non-conforming uses in districts hereafter changed. Whenever a non-conforming use of a building has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use.

"No building which has been damaged by fire, explosion, act of God or the public enemy, to the extent of more than 60 percent of its market value, shall be restored except in conformity with the regulations of this chapter."

Zoning ordinances restrict the actions of the landowner in using his land. These restrictions take from him rights which in the absence of such legislation he could

---

1. As amended by the Board to correct an error in the Section Number.

have exercised as a free property right. Such ordinances tell him not what he can do with his property, but what he cannot do. Unless the ordinance clearly provides that plaintiffs here may not do with their property what they seek to do, then the ordinance cannot form a basis for refusal of the permits requested. See Louisville & Jefferson County Planning & Zoning Comm. v. Stoker, Ky.App., 259 S.W.2d 443.

■ The paragraphs above set out establish the circumstances under which the City may prevent the continuance of a non-conforming use. Unless the circumstances set forth in these paragraphs exist the city lacks the power *under the ordinance* to prevent plaintiffs proposed restoration of his building. The evidence in this case shows that the damage to plaintiffs' building was the result of a sale of a portion of the land to St. Louis County at a time subsequent to the institution of condemnation proceedings against such portion. In such posture the sale (and the resultant damage to the building) was not the voluntary act of plaintiffs' grantors. The courts of this state have recognized that a sale under threat of condemnation to the condemnor is not strictly voluntary. Kansas City v. Thomson, Mo., 208 S.W.2d 216; Jackson County v. Meyer, Mo., 356 S.W.2d 892 [2]. The damage here was caused by forces beyond the owners' control and the need for the building permit sought was not to expand a non-conforming use but to *restore* a building damaged by the act of the sovereign.

We cannot interpret the first paragraph above set forth as applying to this situation. The provisions of that paragraph deal with structural alterations of a building made as the result of an attempt by the land-

owner to extend the *normal* life of a building. Its express provisions do not prohibit structural alteration "required by law or ordinance." It is not intended to, and does not relate or apply to work done on a building as a result of damage of an unusual and unexpected nature. In short, it does not apply to the plaintiffs' situation.

■ The second paragraph above quoted deals with certain types of unusual and unexpected damage. It does not warrant the refusal of a building permit here for two reasons. First, it does not prevent restoration of a non-conforming building damaged by the exercise of eminent domain. If the City Council had desired to regulate the rebuilding of structures damaged as a result of the exercise of eminent domain (as it did with other unusual occurrences) it could have done so within reason. Until it has done so the right to rebuild after condemnation is not restricted. See Kellman v. McShain, 369 Pa. 14, 85 A.2d 32. Secondly, the record here does *not* demonstrate that the damage to plaintiffs' building exceeds 60 percent of its market value. On the contrary, the appraisers' reports of both parties reflect the damage to be less than 60 percent. The Board in effect concedes this by its argument that Sec. 32–40(3) (b)[2] does not empower the Board to grant an exception to allow reconstruction of a non-conforming building damaged less than 60 percent. The essence of this argument is that no non-conforming building can be restored or reconstructed if it is slightly damaged, but, with the Board's consent, can be if severely damaged. Such an interpretation is unreasonable. The only logical interpretation of that provision is that unless the building has been damaged by more than

2. That Section reads as follows:
"3. *Powers Relative to Exceptions.*
Upon appeal, the Board is hereby empowered to permit the following exceptions:
b. To permit the reconstruction of a nonconforming building which has been damaged by explosion, fire, act of God,

or the public enemy to the extent of more than 60 percent of its value where the Board shall find some compelling public necessity requiring a continuance of the nonconforming use, but in no case shall such a permit be issued if its primary function is to continue a monopoly."

60 percent of its market value it may be restored as a matter of right. Only when the damage exceeds that percentage is the City empowered to prevent the reconstruction, and it is only when that percentage is reached that an exception to the ordinance is needed.

■ The provisions of Section 32–21 do not restrict the right of plaintiffs here to the building permit they seek, and in the absence of such restriction they are entitled to restore their non-conforming building.

We turn now to Section 32–25 of the Ordinance upon which the Board placed its reliance in upholding the Director's refusal of the permits.

We note at the outset that that section relates to construction, erection, reconstruction or conversion of a building or structure. It does not deal with restoration of a building, the word used in Section 32–21 in connection with damaged buildings. Furthermore, Section 32–25 must be read in connection with the other provisions of the ordinance. It cannot be interpreted, as the Board has done here, to render meaningless the provisions of the ordinance dealing with non-conforming uses, nor can it serve the function of doing indirectly what cannot be done directly, take from the owner his property without compensation. So viewed the provisions of Sec. 32–25 prohibit the erection of a new building in violation of the set-back provisions, and prevent the expansion of an existing building beyond the set-back line. But here the existing damaged building is already in violation of the set-back provision and no expansion of such encroachment is sought. Plaintiffs seek only to close in the fourth side of an already encroaching building and nothing in Section 32–25 prevents that. In finding that the permits requested by the plaintiffs would violate Section 32–25 of the ordinance the Board erroneously interpreted the ordinance and

its refusal to order the issuance of the permits was illegal.

Two additional matters raised by appellants must be noted. Appellants contend that the price paid by St. Louis County for the portion it acquired by deed included compensation for the entire building and the future use of the remaining land limited by the set-back requirement. It is the Board's position that the Moores conveyed away the right to a non-conforming use and the Moore's grantees are thereby precluded from the permits they seek. The Board admits that the right to a non-conforming use runs with the land. The conclusion of conveyance is supported only by reports of appraisers prepared at the request of each of the parties. These appraisal reports were prepared after the filing of the condemnation petition, after the deeding of the land by the Moores, and after the hearing and decision by the Board. They obviously were not available to the Board and its decision was not based thereon. The appraisals do not purport to represent the values which the County or the Moores placed upon the property in whole or in part at the time the deed to the County was executed. The only evidence of record as to that question is the deed to the County which recites a consideration of $17,500.00 for a fee title to the triangular piece conveyed.

■ Whatever the rights of the Moores might have been had they proceeded through a condemnation hearing to receive compensation for the entire destruction of the building and any subsequent limited use of the land, such course was not followed. The Moores sold instead a portion of the land to the County. The deed does not dispose of any rights in the remaining parcel, nor does the consideration reflect it is for anything other than the strip of land conveyed. We cannot speculate on the basis of the price paid by the County, and cannot presume it took into account anything other than what the deed reflects.

**134** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

On the record before us we cannot say that the Moores were compensated for any more than the parcel conveyed.

▆ The price paid by a condemning authority to purchase land under the threat of condemnation is not competent evidence of the value of the land acquired as such price is in the nature of a settlement or compromise and may be influenced by factors other than value. Jackson County v. Meyer, supra. As pointed out in Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860 [2], such price may reflect only the desire of one or both parties to avoid litigation and therefore be either greater or less than the true value. So here also, we do not believe it valid to compare the price paid by the County with appraisal reports of value of the land to determine inferentially what the landowner was compensated for, particularly where the deed states what was conveyed.

As a subsidiary to this argument the Board asserts that the land is not useless or valueless,[3] and that the consideration paid by the plaintiffs was a "nominal speculative investment." This does not affect the result, for the question here is not whether plaintiffs have achieved a windfall, but whether the Ferguson ordinance prevents the restoration of the building. We have held it does not.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this Court. Accordingly, the judgment is affirmed.

WOLFE, P. J., BRADY, J., and DOUGLAS W. GREENE, Special Judge, concur.

---

3. Although the Board contends that the land has some use, what it is is obscure. Parking lots and storage facilities are not permitted under the use limitations. Structures, including billboards, are forbidden under the set-back requirements. In the view we have taken of the ordi-

nance, it is unnecessary for us to decide plaintiffs' asserted point that no use is permitted of the land under the ordinance and that therefore the ordinance is unconstitutional as it pertains to this parcel of land, citing Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, 843.