### DUSDAL *v* CITY OF WARREN
#### OPINION OF THE COURT

1. ZONING—NONCONFORMING PRIOR USE.

   The reasonableness of a zoning ordinance amendment is not an issue in an action based upon a prior nonconforming use.

2. ZONING—NONCONFORMING PRIOR USE—VESTED RIGHT.

   A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner in which it was used prior to the adoption of a zoning ordinance; though

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Zoning § 171.
[2]  58 Am Jur, Zoning § 173 *et seq.*
[3]  58 Am Jur, Zoning §§ 153, 154, 168.
[4]  ·58 Am Jur, Zoning §§ 153, 154.
[5]  58 Am Jur, Zoning §§ 3, 144.
[6]  58 Am Jur, Zoning § 68.
[7]  58 Am Jur, Zoning §§ 92, 93.
[8]  58 Am Jur, Zoning § 153 *et seq.*
[9]  58 Am Jur, Zoning § 18 *et seq.*
[10, 11]  58 Am Jur, Zoning § 178 *et seq.*

the ordinance be reasonable, it cannot operate to oust the property owner of his vested right.

3. ZONING—NONCONFORMING PRIOR USE—VESTED RIGHT—ABANDONMENT—EVIDENCE—BURDEN OF PROOF.

The record does not support a finding of legal abandonment of a prior nonconforming use where the burden of proving abandonment was on a city attempting to enforce a residential zoning amendment and it introduced no evidence from which it would be reasonable to conclude that the plaintiff ever intended to relinquish or abandon his vested right to use his property in the manner in which it was being used prior to the amendment.

4. ZONING—NONCONFORMING PRIOR USE—ABANDONMENT—NONUSER.

Abandonment of a nonconforming use in the contemplation of the law is something more than a mere nonuser; it is rather a nonuser combined with an intention to abandon the right to the nonconforming use.

5. NUISANCE—ZONING—NONCONFORMING PRIOR USE—VESTED RIGHT —INFERENCES

The existence of a vested right to a prior nonconforming use does not *per se* resolve the issue of whether property is being used so as to be a nuisance, but it does mean that the existence of a nuisance is not to be inferred from proof of activities which do not comply with the zoning ordinance.

DISSENTING OPINION

ADAMS, SWAINSON, AND WILLIAMS, JJ.

6. NUISANCE—ZONING—NONCONFORMING USE—MUNICIPAL CORPORATIONS—PUBLIC HEALTH—PUBLIC SAFETY—SAFETY OF COMMUNITY.

*Property owner's claim that he has an industrial nonconforming use of his property under a zoning ordinance provides no basis for him to contest a city's authority to require him to remove junk on the property because property can be deemed industrial nonconforming or even zoned industrial and still be declared a nuisance if it endangers or interferes with the public health, welfare, or safety of the surrounding community.*

7. NUISANCE—PUBLIC NUISANCE—ABATEMENT.

*Trial judge properly found a public nuisance and ordered the abatement of litter, articles and junk located outside a building on plaintiff's premises.*

8. Zoning—Nonconforming Use—Abandonment.

*Trial judge correctly found abandonment of an industrial nonconforming use because plaintiff's casual activities over the years cannot be considered to have been such a use of his property.*

9. Zoning—Public Policy—Nonconforming Use—Ordinances.

*The desirability of zoning, as a matter of public policy, is clearly recognized and, in the furtherance of zoning, it is also clearly recognized that it is desirable to eliminate nonconforming uses; various provisions in zoning ordinances have been used to further this objective and their validity has been established.*

10. Zoning — Nonconforming Use — Abandonment — Evidence — Courts — Statutes.

*Zoning ordinance provision that failure to continue to use a nonconforming use for a period of one year shall be conclusive proof of an intention to abandon such nonconforming use cannot be sustained; rules of evidence are for the determination of the courts and courts may accept and follow a legislative enactment of a rule of evidence but they are not obliged to do so.*

11. Zoning — Nonconforming Use — Abandonment — Proofs — Evidence.

*Proof that a nonconforming use under a zoning ordinance has not been utilized for a period of one year in addition to the usual proofs of abandonment or nonabandonment shall, in future cases, constitute* prima facie *proof of its abandonment.*

Appeal from Court of Appeals, Division 2, McGregor, P. J., and Danhof and Larnard, JJ., affirming Macomb, Walter P. Cynar, J. Submitted November 2, 1971. (No. 21 October Term 1971, Docket No. 52,861.) Decided May 4, 1972.

23 Mich App 583 reversed.

Complaint by Otto Dusdal against the City of Warren for a declaratory judgment that defendant's action declaring plaintiff's use of his land to be a nuisance to be void, for injunctive relief, and

damages. Counter-complaint by defendant to allow
defendant to order plaintiff to remove litter, articles
and junk from plaintiff's premises. Judgment for
defendant. Plaintiff appealed to the Court of Ap-
peals. Affirmed. Plaintiff appeals. Reversed and
remanded.

*L. Edwin Wenger* (*Larry D. Vande Vrede,* of
counsel), for plaintiff.

*Sherman P. Faunce, II,* City Attorney, and *John
J. Murray,* Chief Assistant City Attorney, for de-
fendant.

T. E. BRENNAN, J.

### FACTS

Plaintiff is the owner of a parcel of land one
and one-half (1-1/2) acres, rectangular in shape,
being 629 feet deep and 98 feet wide. This property
is located on the west side of Hoover Road between
Ten and Eleven Mile Roads in the City of Warren.

Plaintiff purchased the property in 1950, when
Warren was still a township. The land was then
zoned by the township for "multiple use". We are
told that "multiple use" meant that the property
could be used for industrial, commercial or resi-
dential purposes. Plaintiff's and surrounding lands
were then being used for agricultural purposes.

Whatever the township zoning prohibited, it is
clear that plaintiff, in the year 1950, moved several
large punch presses onto his land, and after obtain-
ing a building permit from the township began con-
structing a cement block building around the presses.

What is not so clear is the precise use to which
this land was put. Plaintiff seems to have been

a kind of mechanical dabbler, whose many enterprises are sporadic and unrelated.

Among the various items scattered or stored on plaintiff's property during the years 1950 to 1969 were several junk automobiles, two bulldozers, a truck with a boom, a cultivator, plow and disk, some white escort carts, a portable arc welder, some old tires and wheels, a housing for an engine, an axle for a trailer, a bulldozer trailer, a materials conveyor, a house trailer, a boat, and miscellaneous wood and metal scrap.

A photograph of the premises, introduced in evidence at the trial, is reproduced with this opinion.

Plaintiff completed the main part of the cement block structure, but has never obtained a final inspection or approval of the building or been issued a certificate of occupancy.

In 1952, the township zoning ordinance was amended. Plaintiff's property and surrounding lands were then designated residential and restricted to such use. There is no dispute that at the time of such amendment, plaintiff's property was dedicated to a nonconforming use.

In 1957, the township became the City of Warren. Township zoning ordinances were adopted by the city.

In 1956, an action was commenced by homeowners living near plaintiff's property for the purpose of prohibiting plaintiff's industrial use of his land. Thirteen years later that action was dismissed for lack of progress. On April 25, 1967, the defendant city passed a resolution declaring the plaintiff's property a public nuisance. The plaintiff was directed by a resolution of the city council to remove all outside storage of materials and machinery by 5 p.m. April 1, 1968.

Plaintiff's response was to commence this litigation. It is founded upon a complaint filed in the

Macomb County Circuit Court on April 1, 1968, alleging that the actions of the defendant city in refusing to issue a certificate of occupancy and in declaring plaintiff's property a public nuisance amounted to a confiscation of plaintiff's lands. The complaint alleged that the plaintiff had a prior nonconforming use of his premises for industrial purposes which was established as a vested right prior to the residential zoning imposed by the amendment of 1952.

The defendant city filed a counter-complaint, alleging that its resolution declaring the public nuisance was proper and regular and asking the court for injunctive relief to abate the claimed nuisance.

Trial was held before the Honorable Walter P. Cynar, circuit judge in Macomb County. He rendered his opinion on April 1st, 1969. Judge Cynar found that the residential zoning ordinance was not unreasonable. He ordered the plaintiff to remove the junk stored on the outside of the premises, exempting from said order certain equipment found not to be junk.

Plaintiff appealed and the Court of Appeals affirmed the judgment of the circuit court in a brief *per curiam* opinion, citing *Padover* v *Farmington Twp,* 374 Mich 622 (1965); *Biske* v *City of Troy,* 381 Mich 611 (1969); *Brae Burn, Inc.* v *Bloomfield Hills,* 350 Mich 425 (1957); *Lamb* v *City of Monroe,* 358 Mich 136 (1959). None of these cases involved a prior nonconforming use.

In an action based upon a prior nonconforming use the reasonableness of the zoning amendment is not in issue. A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner it was used prior to the adoption of a zoning ordinance. Though the ordinance be reasonable, it cannot operate to oust the property

owner of his vested right. The finding of the circuit judge that the ordinance was not unreasonable was irrelevant. We are satisfied of the existence of the prior nonconforming use not only from the proofs but from the factual findings of the trial court. While the trial court did not elaborate upon the subject, its opinion did cite the section of the ordinance of the City of Warren dealing with abandonment of nonconforming uses, and it may be that the court concluded that the sporadic and irregular nature of the plaintiff's user was tantamount to an abandonment.

The record does not support a finding of legal abandonment. Abandonment in the contemplation of the law is something more than mere nonuser. It is rather a nonuser combined with an intention to abandon the right to the nonconforming use. The burden of proving abandonment was on the city. It introduced no evidence from which it would be reasonable to conclude that the plaintiff ever intended to relinquish or abandon his vested right to use his property in the manner in which it was being used prior to the residential zoning amendment.

The record does not support a finding that the plaintiff was engaged solely in the electrical contracting business. On the contrary, the record can only support a determination that the plaintiff was engaged in numerous endeavors from the year 1950 down to and including the trial in 1969.

The existence of a vested right to a prior nonconforming use does not *per se* resolve the issue of nuisance, but it does mean that the existence of a nuisance is not to be inferred from proof of activities which do not comply with the zoning ordinance. The judgment of the circuit court and the Court of Appeals are reversed and this cause is remanded to the circuit court for further pro-

ceedings in accordance with this opinion.  Plaintiff shall have costs.

T. M. KAVANAGH, C. J., and BLACK and T. G. KAVANAGH, JJ., concurred with T. E. BRENNAN, J.

ADAMS, J. (*dissenting*).

### I. THE PROCEEDINGS

In August 1950, plaintiff purchased 1-1/2 acres of land in Warren Township, Macomb County, Michigan.  At that time, the property was zoned for three purposes—industrial, commercial, and residential. Plaintiff moved onto his land three large punch presses and other equipment he used in his various occupations of restoring old cars, electrical work, and general contracting.  On October 4, 1950, Dusdal applied for a building permit for a commercial building.  On October 6, 1950, after a first trench

examination, the inspector noted on an inspection card that the building would be industrial. He based this change in classification on the presence of the presses.

In 1952, the City of Warren rezoned the area to residential only. From time to time, various improvements on Dusdal's building were approved by the city. The city never interfered with his use of the land. However, on April 25, 1967, in response to complaints from the neighborhood concerning junk on the property, the city passed a resolution declaring the property a public nuisance and ordering plaintiff to remove the debris from his outside premises.

Dusdal thereupon applied for an injunction in April 1968 to prevent the city from carrying out its resolution. He complained that he used his property for industrial purposes, that the city had refused to grant him an occupancy permit, that he had been ordered to remove all outside storage materials, and that the refusal of the occupancy permit and the order to remove the outside materials constituted confiscation of his property and prohibited a nonconforming use.

The city denied that its actions were confiscatory or prohibited Dusdal's enjoyment of his nonconforming use and, by counter-complaint, asked that it be allowed to order Dusdal to remove "the litter, articles and junk from said premises".

The circuit judge issued a show cause order to Dusdal as to why he should not be ordered "to abate the public nuisance and remove the litter, articles and junk from said premises".

Dusdal then amended his complaint to challenge the residential zoning of his property. The city answered that plaintiff had a nonconforming use but had illegally expanded that right by allowing open storage and junk. Under the city's ordinances,

open storage is allowed on industrial M–2 property, but junk is allowed only on industrial M–4 property. Any lawful nonconforming use existing at the time of rezoning is allowed to continue. Failure to continue a use for one year or more is stated to be conclusive proof of legal abandonment.

At the trial in 1969, it became clear that Dusdal wanted a nonconforming industrial use or his property rezoned M–2. Dusdal's testimony showed that he repaired an average of one car a year, made some lighting poles and ventilating systems, and did some remodelling and repairs on buildings. Nothing was manufactured on a mass production basis. Outside of the building, there was a car chassis basically stationary for 17 years, and a conveyor, a bulldozer, an arc welder, and two escort carts not used for two years or longer. Other equipment was also parked outside. The zoning inspector, who had been inside the building, testified that it was "Extremely crowded * * * before you could do one thing in there, you would have to move something else to have the room to do it".

After hearing the testimony, the judge concluded that the large presses could not be construed to make the building around them either industrial or commercial; that "the Plaintiff did not support his contention in the last several years that he operated an electrical contracting, fabricating, welding or any other business; or even if he did on a minor scale, such operation *does not relate to the various and sundry junk accumulation on the property in question*". (Emphasis added.) As for an industrial nonconforming use, "the property has not been used for industrial purposes and such nonconforming use, if any, over the years has not been exercised and has been abandoned several years before the action herein". The judge did not find the zoning

plan confiscatory as to Dusdal, and refused, by judicial action, to rezone the property to M–2.

The Court of Appeals affirmed the circuit court but based its decision on the validity of the zoning ordinance. It also affirmed the trial court's conclusion that an industrial use had not been shown.

## II. NUISANCE

On grant of leave to appeal to this Court, plaintiff challenges the zoning ordinance, asks for a judicial rezoning of his property to M–2, and an occupancy permit. These issues have nothing to do with the separate equitable issue of a public nuisance caused by junk on the property. Dusdal's claim that he has an industrial nonconforming use provides no basis for him to contest the city's authority to require him to remove the junk. Property can be deemed industrial nonconforming or even zoned industrial and still be declared a nuisance if it endangers or interferes with the public health, welfare, or safety of the surrounding community. It is clear from the record in this case[1] that the trial judge did not err in finding a public nuisance and ordering its abatement.

## III. ABANDONMENT

The question as to what constitutes abandonment of a nonconforming use has not been fully explored by this Court. Many cases state that abandonment is to be determined as a matter of the intent of the person possessing the nonconforming use, plus some overt act indicating abandonment. The trouble with such a rule is that it tends to turn mainly upon a subjective element—what has gone on in the mind of the possessor of the nonconforming use. Since a

---

[1] See, also, the photograph of the premises reproduced with Justice T. E. BRENNAN's opinion.

nonconforming use is likely to be of value, almost certainly anyone possessing such a use will assert that he never intended to give it up even if he has not utilized it for many years.

8 McQuillin, Municipal Corporations (3rd ed), § 25.189, p 377, states:

"It is a general rule that the right to a nonconforming use continues only so long as the use continues to exist in fact and until its legal termination * * * ."

Dusdal maintained he had an industrial use because he utilized the building for "fabricating, welding," and repair work. Though Dusdal moved three large punch presses on the land at the time of purchase (1950), he did not produce any parts from these presses in 1951, did one job in 1952, and had one die tryout in 1953. During 1954–1955, he could not remember any work being done with the presses. During 1956–1957, he could testify to one die tryout. As to the length of that tryout, defendant's attorney asked: "That would be just an hour a day or so?" Dusdal responded: "Or week." The last time he used the presses at all was for one week during 1963 or 1964. The presses were sold at least four years before Dusdal filed his complaint.

As for welding, his attorney asked: "Is there anything there that you make?" Dusdal responded: "We take some parts, half of one and half of another one, and cut it off and weld them together and so on." However, he repaired only one car per year. In general contracting, he could not remember doing any job from 1953–1956, and from 1956–1960 could only testify to six jobs.

In 1964, Dusdal could not remember doing any fabricating. In 1965, "we fabricated some lighting poles and some photographic parts, and also some

ventilating hoods". The fabricated lighting poles did not amount to more than a dozen.

If plaintiff ever did make an industrial use of his property, his casual activities over the years cannot be considered to have been such a use. The trial judge correctly found abandonment.

## IV. The One-Year Provision of the City's Ordinance as to Abandonment

The desirability of zoning, as a matter of public policy, is clearly recognized. In the furtherance of zoning, it is also clearly recognized that it is desir-able to eliminate nonconforming uses. Various provisions in zoning ordinances have been used to further this objective and their validity has been established.[2]

Art IV, § 4.17(a) of the City of Warren zoning ordinance adopted in 1960 provides:

"Failure to continue to use any land, building or structure, or part thereof, which use is a nonconforming use under this Ordinance, for a period of one (1) year or more shall be held to be conclusive proof of an intention to legally abandon any such non-conforming use."

The ordinance provides an objective test of the subjective question of intent. However, the provi-

---

[2] See *Brady* v *The North Western Ins Co*, 11 Mich 425 (1863), which involved an ordinance prohibiting the rebuilding of wooden buildings destroyed by fire. Ordinances frequently provide that nonconforming buildings may not be repaired after a certain percentage has been destroyed by fire, explosion, etc. (35 Mich L Rev 642, 645–647 [1937]). This Court has upheld ordinances forbidding nonconforming structures from being structurally altered, improved or enlarged so as to extend a nonconforming use. *Austin* v *Older*, 283 Mich 667 (1938); *Cole* v *Battle Creek*, 298 Mich 98 (1941); *Hillsdale* v *Hillsdale Iron & Metal Co, Inc*, 358 Mich 377 (1960). It has condemned spot zoning or rezoning that was contrary to a general plan of zoning adopted by a township or city. *Penning* v *Owens*, 340 Mich 355 (1954); *South Central Improvement Association* v *St. Clair Shores*, 348 Mich 153 (1957). See also, 101 CJS, Zoning, §§ 189–200; 58 Am Jur, Zoning, §§ 153–168; 8A McQuillin, Municipal Corporations (3d ed), §§ 25.182–25.212a.

sion that the proof shall be conclusive cannot be sustained. Rules of evidence are for the determination of the courts. The courts may accept and follow a legislative enactment of a rule of evidence but they are not obliged to do so. See *Perin* v *Peuler,* 373 Mich 531, 540–543 (1964).

This ordinance has the effect of shifting the burden of proof as to abandonment after a one-year period of nonuse and to this extent it is an acceptable and desirable rule of evidence. It balances the continuation of the nonconforming use of an owner of property against the desirability to the public generally of eliminating such a use. It affords a reasonable means of determining the existence of such a use or of its abandonment. Consequently, in future cases, in addition to the usual proofs of abandonment or non-abandonment, proof that a nonconforming use has not been utilized for a period of one year shall constitute *prima facie* proof of its abandonment.

## V. Relief

In this case, the judge ruled that the city could require Dusdal to remove the outside junk on his premises. The judge did not order him to remove his welding equipment, material conveyor, farm equipment, or any material associated with his electrical work. The order, allowing outside storage of this equipment, is contradictory to the judge's finding of no industrial use or abandonment of same.

However, from the city's counter-complaint and opening statement at trial, the city was mainly interested in getting rid of litter and junk. The equipment was not junk. The fact that the judge, in spite of his finding of no industrial use, allowed outside storage of various pieces of equipment, would appear to be to plaintiff's advantage.

While the injunction issued by the trial judge is more restricted in its scope than one the city would be entitled to, either on the theory of a nuisance or because of abandonment of a nonconforming use, since the city is not complaining on this score we do not expand the terms of the injunction granted.

The Court of Appeals and the trial court are affirmed. Costs to appellee.

SWAINSON and WILLIAMS, JJ., concurred with ADAMS, J.