Kenneth JACOBS, Martha Jacobs, Plaintiffs-Appellants,

v.

MISHAWAKA BOARD OF ZONING APPEALS, Defendant-Appellee.

No. 3–1277A306.

Court of Appeals of Indiana, Third District.

Oct. 23, 1979.

Rehearing Denied Jan. 9, 1980.

John D. Bodine, Mishawaka, for plaintiffs-appellants.

R. Wyatt Mick, Jr., Mishawaka, for defendant-appellee.

GARRARD, Presiding Judge.

On July 25, 1974, the Building Commissioner of the City of Mishawaka issued an order to cease and desist operation of a used car lot on the property of appellants Kenneth and Martha Jacobs.

The property in question is presently zoned C–1 (commercial) which does not include among its permitted uses a used car business. The proper zoning for a used car business is C–4. At the time the present Mishawaka Zoning Ordinance was enacted, placing a C–1 zoning classification on the property, a service station was in existence and operating. It is uncontested that the service station, also classified as a C–4 use, was a legal non-conforming use. The property's use as a service station was discontinued for a period of time and, subsequently, the Jacobs commenced the used car business which was ordered to be closed down.

The Jacobs appealed the order to the Mishawaka Board of Zoning Appeals (Board) contending that the present use did not violate the ordinance and that the order was illegal. The Board affirmed the cease and desist order and the trial court, in turn, affirmed the decision of the Board. This appeal followed.

The issue before this court is whether the use of the property as a used car lot was a legal non-conforming use under the zoning ordinance.

The phrase "non-conforming use" is defined as a use of premises which lawfully existed prior to the enactment of a

zoning ordinance and which is allowed to be maintained or continued after the effective date of the ordinance although it does not comply with the use restrictions applicable in the area. *City of Beech Grove v. Schmith* (1975), 164 Ind.App. 536, 329 N.E.2d 605; *Ashley v. City of Bedford* (1974), 160 Ind.App. 634, 312 N.E.2d 863. Zoning ordinances contain provisions exempting existing non-conforming uses from the use restrictions because the right of a municipality to enact zoning restrictions is subject to the vested property interests acquired prior to the enactment of the zoning ordinances. An ordinance prohibiting any continuation of an existing lawful use within a zoned area is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power. *Blundell v. City of West Helena* (1975), 258 Ark. 123, 522 S.W.2d 661; *O'Connor v. City of Moscow* (1949), 69 Idaho 37, 202 P.2d 401; *Sanderson v. DeKalb County Zoning Board of Appeals* (1974), 24 Ill.App.3d 107, 320 N.E.2d 54; *Connor v. Township of Chanhassen* (1957), 249 Minn. 205, 81 N.W.2d 789; *State ex rel. Capps v. Bruns* (Mo.App.1962), 353 S.W.2d 829; *State ex rel. Fairmount Center Co. v. Arnold* (1941), 138 Ohio St. 259, 34 N.E.2d 777; *State ex rel. Nealy v. Cole* (Mo.App.1969), 442 S.W.2d 128; *City of Akron v. Chapman* (1953), 160 Ohio St. 382, 116 N.E.2d 697; *Harbison v. City of Buffalo* (1958), 4 N.Y.2d 553, 176 N.Y.S.2d 598, 152 N.E.2d 42. In view of the fact that the ultimate purpose of zoning regulations is to confine certain classes of uses and structures to certain areas, non-conforming uses are not generally favored since they detract from the attainment of that purpose. Thus, the policy of zoning ordinances is to secure the gradual, or eventual elimination of non-conforming uses and to restrict or diminish rather than increase such uses. *Holloway Ready Mix Co. v. Monfort* (Ky.App.1968), 474 S.W.2d 80; *Hoffmann v. Kinealy* (Mo.1965), 389 S.W.2d 745; *Brown v. Gambrel* (1948), 358 Mo. 192, 213 S.W.2d 931; *State v. Accera* (1955), 36 N.J.Super. 420, 116 A.2d 203. To that end, municipalities have employed various regulatory methods such as prohib-

iting the resumption of a non-conforming use after its abandonment; prohibiting the rebuilding or alteration of non-conforming structures; prohibiting or restricting a change from one non-conforming use to another or the compulsory termination of a non-conforming use at the expiration of a specified time. *Hoffmann v. Kinealy, supra.*

The extent to which a change in a non-conforming use is permissible depends upon the provisions of the zoning regulation, the nature of the uses in question and the facts of the particular case in question. Each case involves and requires a determination and consideration of the facts of the particular case measured against the language of the applicable ordinance or statute. *City of Beech Grove v. Schmith* (1975), 164 Ind. App. 536, 329 N.E.2d 605; *Powers et al. v. Building Inspector of Barnstable* (1973), 363 Mass. 648, 296 N.E.2d 491. "Drawing conclusions from other cases is dangerous because the zoning regulations governing non-conforming uses vary widely from jurisdiction to jurisdiction." *City of Beech Grove, supra*, 329 N.E.2d at 611.

The pertinent portions of the City of Mishawaka Zoning Ordinance No. 1378 reads as follows:

"Article I

DEFINITIONS AND RULES OF CONSTRUCTION

Sect. 1. Definitions

(63) Non-Conforming Use.

"Any building or land lawfully occupied by a use which at the time of the passing of this Zoning Ordinance or an amendment thereto does not conform with the regulations in the district in which it is situated.

\* \* \* \* \* \*

Article II. Zoning Districts

Sect. 3. Restrictions

Except as hereinafter provided, no building or structure shall be erected or altered, nor shall any building or premises be used for any purpose other than a use permitted in the district in which such building or premises may be located.

Any existing structure not in conformity with the provisions of this Ordinance may be altered during its remaining economic life, and permits for additions and alterations and for constructing accessory buildings thereto shall be given by the Building Commissioner in cases where the structure will not be substantially altered thereby.

No building or premises shall be used so as to create greater height, smaller yards or less unoccupied area than is permitted under the provisions of this Ordinance; and no building shall be occupied by more families than hereinafter prescribed for such building in the district in which it is located. No lot, which is now or may be hereinafter built upon, as herein required, may be so reduced in area so that the yard and open spaces provided about any building for the purpose of complying with the provisions hereof shall be again used as a yard, court or other open spaces for any other building.

"Article XX

Non-Conforming Uses

Section 1. Definition and Continuation Thereof

The lawful use of land, buildings or premises, existing at the time of the adoption and passage of this Ordinance may be continued, although such use does not conform to the provisions of this Ordinance.

Section 2. Extension

The lawful non-conforming use of a building or premises existing at the time of the adoption and passage, amendment, supplement or change of this Ordinance may continue, although such use does not conform with the provisions hereof.

Section 3. Changes

A non-conforming use may not be changed to another non-conforming use of greater restriction without the permission of the Board of Zoning Appeals regardless of whether or not structural changes are made or required to be made in the building or premises.

A non-conforming use when changed to a conforming use may not thereafter be changed back to any non-conforming use without the permission of the Board of Zoning Appeals.

Section 4. Discontinuance

Discontinuance for a period of one (1) year shall constitute abandonment of a non-conforming use.

Section 5. Reconstruction and Repair of Buildings and Premises

A lawful non-conforming use of a building existing at the time of the passage of this Ordinance and which building is damaged or destroyed by fire or other than by acts of the owner or agent, may be repaired or rebuilt, but the extent of the repairs or reconstruction shall not be greater than existed previously.

Section 6. Temporary Permit

The Board of Zoning Appeals may authorize, by written permission, in any district for a determinate period, a temporary building for commercial or industrial use incidental to the construction and development in said district."

The Jacobs contend that the terms of this ordinance, specifically Art. XX Sec. 3, allow them to utilize the property for a used car business since such use is a non-conforming use of the same restriction as prevailed at the time the ordinance was enacted, to-wit: C–4.

■ While such a change is not explicitly provided for, it is implicit in Section 3 of Article XX that an existing non-conforming use may be changed to a non-conforming use of the same or less restriction. This section is the only part of the ordinance which deals with changes of non-conforming uses. It does not explicitly prohibit such a change, nor does any other section of the ordinance. The only restrictions placed on changes relate to changes to a greater restricted use or changes after reversion to a conforming use. If the ordinance were interpreted as prohibiting any changes of use other than to a conforming one, Sect. 3 would serve no purpose. In addition, if the

enacting authority had desired to restrict changes to the same or less restrictive non-conforming use, such restrictions could easily have been set forth in this section. It would be absurd to interpret the ordinance as permitting changes in use to a greater restricted use or the resumption of a non-conforming use under certain conditions but as not permitting changes of use to the same or less restricted classifications under any conditions. We cannot presume that the enacting body expected that the ordinance would be applied in such an illogical manner. *In re Marriage of Lopp* (1978), Ind., 378 N.E.2d 414; *City of Indianapolis v. Ingram* (1978), Ind.App., 377 N.E.2d 877.

We also believe that our interpretation gives effect to the intentions of the enacting body.

The provisions of the zoning ordinance of the City of Mishawaka, as they relate to non-conforming uses, as set out above, evidence an intent to secure a gradual rather than rapid elimination of non-conforming uses. They do not provide, for example, for the "amortization" of the non-conforming uses by requiring termination of such uses within or at the expiration of a specified period of time. The ordinance allows alteration during the economic life of the non-conforming structure where the structure will not be substantially altered thereby. A non-conforming structure damaged or destroyed by fire or other than by act of the owner or agent may be repaired or rebuilt to the extent of the prior existing structure. The ordinance also provides for a relatively lengthy period of disuse to constitute abandonment. Furthermore, Article XX Section 3, provides that permission may be obtained from the Board of Zoning Appeals to change a non-conforming use to another non-conforming use of greater restriction and to revert back to the non-conforming use after a change to a conforming use.[1]

The Board argues that this interpretation results in a conflict between the ordinance and IC 18–7–4–78. The statute provides in pertinent part that the Board shall not grant a variance from a use district or classification.

The Board contends that a change from one non-conforming use to another in the same or lesser classification amounts to a variance. We disagree. The ordinance does not provide that a variance be granted in this situation. It merely allows a property owner to continue using the property in a non-conforming manner. Under the provisions of the ordinance, a property owner has the right to change the use of his property in this manner. He is not required to seek a variance or rezoning of his property nor may a lawful change be interfered with.

The Board also contends that this interpretation frustrates the legislative intent to allow a city to define and prescribe its uses for land within its boundaries by use of zoning ordinances. In view of the fact that it was the city that enacted the zoning ordinance under consideration, we fail to see any merit in this argument. While the Board or this court may not agree with the decisions of the city and may consider its policies unwise, the legislature has empowered the city to enact such zoning ordinances as it deems necessary to secure adequate light, air, convenience of access and safety from fire, flood or other danger; to lessen congestion in the public streets; to preserve property value and promote the public health, safety, comfort, morals, convenience and the general public welfare. IC 18–7–4–46. The method by which the city decides to achieve the basic purpose of zoning is within its discretion.

Therefore, we conclude that the trial court erred in deciding that the ordinance did not permit a lawful non-conforming use to be changed to another non-conforming use of the same or lesser restrictions.

The city contends, however, that even if such a non-conforming use were permitted by the ordinance, Jacobs lost their rights by abandonment. The record reveals that the property's use as a service station had been

---

1. We do not reach the question of whether obtaining such permission from the Board of Zoning Appeals constitutes obtaining a variance in violation of IC 18–7–4–78.

discontinued for a period of time but the record is silent as to how long or the other circumstances involved. The Jacobs deny that the discontinuance had lasted for a period of one year. No evidence was introduced to establish the length of time of the discontinuance.

A person who claims a legal nonconforming use has the burden of establishing his claim. *Ashley v. City of Bedford* (1974), 160 Ind.App. 634, 312 N.E.2d 863; *O'Banion v. State ex rel. Shively* (1969), 146 Ind.App. 223, 253 N.E.2d 739. Once a legal non-conforming use has been established, the burden of proving the termination of that use by abandonment or discontinuance rests on those opposing the non-conforming use. *Marchese v. Norristown Borough Zoning Board of Adjustment* (1971), 2 Pa. Cmwlth. 84, 277 A.2d 176; *Dusdal v. Warren* (1972), 387 Mich. 354, 196 N.W.2d 778. Since no evidence was presented which would sustain that burden, the failure falls to the city.

We hold that in accordance with the applicable zoning regulations, the Jacobs had the right to use the property in question for a used car business as it falls within the same zoning classification as the prior lawful non-conforming use, to-wit: C–4.

We therefore reverse the judgment of the trial court with instructions to vacate the cease and desist order of the Mishawaka Building Commissioners.

HOFFMAN, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent. The majority concludes that pursuant to the zoning ordinances of the City of Mishawaka, property which is subject to a particular nonconforming use may become the site of any activity which happens to bear the same general zoning classification. That proposition is based on a mistaken analysis of the Mishawaka City Council's intentions in enacting its zoning scheme; its application at some future date could impose a ludicrous result on the city's attempt to achieve orderly development.

The majority's conclusion that the Jacobs are entitled to substitute a used car sales operation for the existing nonconforming use—a service station—is based on the following language contained in Article XX, Section 3 of the Mishawaka Zoning Ordinance:

"A non-conforming use may not be changed to another non-conforming use of *greater restriction* without the permission of the Board of Zoning Appeals regardless of whether or not structural changes are made or required to be made in the building or premises." (Emphasis added.).

The majority's analysis is predicated on the supposition that the phrase "greater restriction", as it is employed in Section 3, is synonymous with "more-restricted zoning classification." From that premise, the majority makes the following syllogism: (1) Pursuant to Section 3, it is only when a landowner seeks to change a nonconforming use to another nonconforming use of a *more-restricted zoning classification* that permission must be obtained; (2) Under Section 3, no limitations are placed on a landowner's capacity to change a nonconforming use to another nonconforming use of the *same or less-restricted zoning classification;* and (3) therefore, since both used car businesses and service stations are categorized under the *same* zoning classification ("C–4"), the Jacobs were entitled to change the use of their property.

While the majority's syllogistic rationale may perhaps appear plausible in the factual contest before us, its fallacious nature is readily explainable. Initially, the majority has erred in its supposition that the phrase "greater restriction" is synonymous with "more-restricted zoning classification." Inasmuch as zoning classifications are generally determined upon the basis of types of activity, I reject the majority's blithe conclusion that different zoning classifications can, *as a rule*, be characterized as "less-restricted" or "more-restricted" vis-a-vis one another.

There is no doubt that in particular instances those distinctions can be validly drawn. For example, Mishawaka's "R–2" zoning classification encompasses all types of residential uses permitted within the city's "R–1" classification, plus additional types of residential housing. Consequently, Mishawaka's "R–2" classification can properly be characterized as "less-restrictive" than its "R–1" counterpart.

In numerous instances, however, the zoning classifications outlined in the Mishawaka Zoning Ordinance are mutually exclusive with respect to the uses permitted under each classification.[1] For example, all types of residential uses are expressly forbidden within areas zoned "I–1" (Industrial). Mishawaka Zoning Ordinance No. 1378, Art. XI, § 1 (1966). Conversely, uses permitted under the "I–1" classification are not allowed in areas zoned for residential use. Mishawaka Zoning Ordinance No. 1378, Art. III *et seq.* (1966). Given their mutually exclusive character, it is impossible, except perhaps on an existential basis, to characterize either classification as "less-restricted" or "more-restricted" than the other; they are simply different classifications which encompass dissimilar types of uses. Accordingly, in the context of mutually exclusive zoning classifications, the rule which the majority has derived from Section 3 is not susceptible to application.

The majority's interpretation of Section 3 is thus invalid: its application can be effectuated in only a portion of the situations which can arise under Mishawaka's zoning scheme. This fatal infirmity stems from the majority's failure to recognize that the phrase "greater restriction", as it appears in Section 3, is ambiguous.

When this Court is called upon to construe an ambiguous term in an ordinance, it is advisable to consider the consequences of a particular construction. *State ex. rel. Bynum v. LaPorte Superior Court No. 1* (1973), 259 Ind. 647, 650, 291 N.E.2d 355, 356. Here, any lingering doubts as to the fallacious nature of the majority's analysis vanish upon an examination of its consequences.

For example, under Article VII, Section 1 of Mishawaka's Zoning Ordinance, both antique shops and motor bus terminals are categorized under zoning classification "C–1" (Commercial). Pursuant to the majority's holding here today, a landowner who was operating an antique shop on his premises at the time when that land, as well as its surrounding area, was rezoned for residential use, could, at some later date, replace the antique shop with a motor bus terminal. For that matter, he or she could opt to establish a bowling alley, dance hall, department store, tavern, pool room, meat processing center, funeral home, or any of the myriad of activities which are designated as "C–1" uses in Mishawaka's zoning ordinance.

If the majority had adhered to the well-established rule that a provision of a municipal zoning ordinance should not be construed without reference to other relevant provisions of the ordinance,[2] it might have realized that the Mishawaka City Council could not have intended such a paradoxical approach to its regulation of land use. At the outset of its opinion, the majority acknowledges that in order that the ultimate purposes of zoning be served, "the policy of zoning ordinances is to secure the gradual, or eventual elimination of non-conforming uses and *to restrict or diminish rather than increase such uses.*" (Emphasis added.) Majority Opinion, *supra.* Incongruously,

---

1.  Among the various mutually exclusive zoning classifications present in Mishawaka Zoning Ordinance No. 1378 (1966) are the following: (1) Uses permitted in R–1 and R–2 (Residential) zones are not allowed in C–2 (Commercial) zones, and vice versa; (2) Uses permitted in R–1, R–2, and R–4 zones are forbidden in C–3 zones, and vice versa; (3) Uses permitted in I–1 and I–2 (Industrial) zones are forbidden in C–2 and C–4 zones, and vice versa; (4) R–1,

R–2, R–3, and R–4 uses are not permitted in areas zoned I–2, and vice versa; and (5) Uses specified in zoning classification M–1 (Special) cannot be conducted in areas zoned for any other purpose, nor can any other use be conducted in an area zoned M–1.

2.  *Carpenter v. Whitley Cty. Plan Com'n* (1977), Ind.App., 367 N.E.2d 1156, 1161.

the majority then subverts that policy,[3] enlarging the license to operate a particular nonconforming use to include the prerogative to establish any use which happens to share the same general zoning classification. It is ironic that the majority, in the same breath in which it attributes its result to the Council, expresses its cognizance of the rule that a presumption exists that a legislative body does not expect its enactments to be applied in an illogical or absurd manner. *In re Marriage of Lopp* (1978), Ind., 378 N.E.2d 414, 422; *City of Indianapolis v. Ingram* (1978), Ind.App., 377 N.E.2d 877, 884.

I dissent.

---

**3.** While I agree with the majority that reliance on case precedent in the area of zoning can be dangerous, I suggest that it is equally hazardous to ignore the respect our Courts have accorded the above-discussed policy considerations. In *Fidelity Trust Co. v. Downing* (1946), 224 Ind. 457, 68 N.E.2d 789, our Supreme Court held that a refreshment stand which had been ravaged by fire could not be reconstructed because the building, prior to the fire, was already worn and dilapidated. Reconstruction, the Court reasoned, would extend the nonconforming use beyond its normal life. In *O'Ban-*ion v. State ex. rel. Shively (1969), 146 Ind.App. 223, 253 N.E.2d 739, the Court, *obiter dictum,* indicated that a nonconforming use for the sale of beer could not be enlarged to encompass the sale of wine and liquor. In *Chizum v. Elkhart County Plan Commission* (1970), 147 Ind.App. 691, 263 N.E.2d 654, the Court held that the erection of lightpoles along a drag strip which was a nonconforming use constituted an illegal expansion of that permitted use. Our decision here reflects a contrary attitude to the policy considerations surrounding the expansion or enlargement of a nonconforming use.