## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2015, 10:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Paul A. Rake
John M. McCrum
Eichhorn & Eichhorn, LLP
Hammond, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Board of Public Works and Safety of the City of Hammond, | December 23, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 45A03-1412-PL-433 |
| v. | Appeal from the Lake Circuit Court |
| Erik Alcantar, Sr. and Guadalupe Alcantar, | The Honorable George C. Paras, Judge, and the Honorable Robert G. Vann, Magistrate |
| *Appellees-Plaintiffs* | Trial Court Cause No. 45C01-1007-PL-132 |

**Mathias, Judge.**

[1]     The Board of Public Works and Safety of the City of Hammond ("the Board") issued an order directing Erik and Guadalupe Alcantar ("the Alcantars") to

convert their multiple-unit rental property into a single-family residence. The Alcantars appealed the order to the Lake Circuit Court, and the court reversed the Board's order after concluding that the Alcantar's use of the premises as a multi-unit dwelling was lawful. The Board appeals and raises four issues, which we restate as a single dispositive issue: whether the trial court erred when it concluded that the Board's order was arbitrary, capricious, unsupported by the evidence, or contrary to law.

[2] We reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[3] The Alcantars own a residential property located at 4409 Johnson Avenue in Hammond, Indiana, which was built in 1914. The building is divided into three separate apartments: one on the first floor, one on the second floor, and one in the third floor attic. The Alcantars purchased the property in 2004 from Thomas Suroviak ("Suroviak").

[4] The Alcantar's property was likely built as a single-family dwelling but later converted to a three-unit rental property at some unknown, later time. Although the property is currently located in an area zoned as single-family residential, it is not known whether a zoning ordinance was in effect when the property was built in 1914.

[5] Suroviak owned the property for approximately thirty years before he sold it to the Alcantars in 2004. Suroviak purchased the property, which was being used as a three-unit rental property, because he felt it would be a good investment.

Tr. p. 57. Suroviak has lived in Hammond for his lifetime and believes that the residence was maintained as a three-unit rental property since the 1940s.

[6] In the mid-1990s, a Hammond city official told Suroviak that he could not continue to rent the third floor unit because it only had one exit via an interior staircase at the entrance to the building. Therefore, Suroviak added an exterior staircase to the front of the property to provide a second exit for the third-floor unit so he could continue to rent the unit. Also, Hammond issued various permits for repairs to the property while Suroviak owned it.

[7] After the Alcantars purchased the property in 2004, they continued to utilize it as a three-unit rental. The Lake County Assessor's office also lists the property as a residential three-family dwelling. Ex. Vol., Plaintiff's Exs. 4, 5; *see also* Tr. pp. 101-02. Also, the Alcantars have annually registered the property with Hammond as a three-unit rental. Tr. pp. 114-15.

[8] In September 2009, Hammond building inspectors assessed the Alcantars' property. In May 2010, the Alcantars received a notice of violation by the Hammond Building Commissioner. The Alcantars' property was deemed an unsafe building for several reasons, including the fact that no request was made to the Zoning Board to convert the building into three apartments. Appellant's App. pp. 50-51. The property was also deemed unsafe because fire partitions between the three units were inadequate, and the ceiling, stairway, door opening, and exit access heights were insufficient. In addition, the fire-resistance rating of the walls of the property was not one hour, as required by

the building code. Finally, the notice of violation alleged the following building code violation between the second and third floors: "specifically egress from a room or space shall not pass through adjoining or intervening rooms or areas, except where such adjoining rooms or areas are accessory to the area served; are not a high hazard occupancy and provide a discernible path of egress travel to an exit." Appellant's App. p. 51.

[9] A hearing was held on the alleged violations of the building code on May 27, 2010. On July 8, 2010, Hammond's Board of Public Works and Safety determined that the "subject property including the second and third floor apartments as presently constructed does not constitute a pre-existing legal non-conforming use and must be removed and converted back to a single family home." Appellant's App. p. 42. The Board entered the following findings to support its order:

> 1. There were no permits for construction of walls, electric or plumbing, which would have been required by the certified copy of the 1937 Municipal Code of Indiana, Chapter 111 Buildings. . .
> 2. As stated in the 1938 official Building Code for the City of Hammond, . . . Ceilings separating dwelling unites require ¾" plaster. Today's Building Code requires two sheets of 5/8 drywall. Points being that fire protection requirements were in place in 1938 as they are today.
> 3. The assessor only determines the number of units currently present, not whether they are legal or code compliant.
> 4. The Lake County Assessor's record does show the building built in 1914 as a single family home with a ½ finished attic and full basement.
> 5. The 1907 Building Code states in Part II, Section 3, no building already erected, or hereafter to be built in said City, shall be

raised, altered, moved or built upon in any manner, that would be in violation of the building code. The 1907 Building Code states in Section 4, before any alteration of any building, the owner or lessee, or agent of either, shall submit to the commissioner of buildings, a full and complete copy of the plans of such proposed work.

6. No Building Permits were ever applied for with the City of Hammond or issued for converting the single family home into three units, as required by Law, dating back to 1914. Counsel for Alcantars acknowledges that there were no permits pulled.

7. By Code and Ordinances provided by the City of Hammond Inspections Department these apartments have never been a legal non-conforming use.

Appellant's App. p. 41.

[10] The Alcantars appealed the Board's order to the Lake Circuit Court. The trial court held a hearing on the Alcantars' complaint over three days in June 2014. On November 5, 2014, the trial court issued findings of fact and conclusions of law, reversing the Board's order and concluding that the Alcantars' use of the property as a three-unit rental is lawful.

[11] The trial court issued the following relevant findings to support its judgment:

3. No permits or other records exist to indicate the original usage of the property at 4409 Johnson when it was initially constructed in 1914.

4. The records of permits maintained by the City of Hammond only go back as far as 1923.

5. The Court finds clear and convincing evidence that the City of Hammond has no records prior to 1923 regarding the usage or zoning of any property.

6. The Court finds clear and convincing evidence that the City of

Hammond has no records prior to 1923 regarding the usage or zoning of the Johnson Avenue property.

7. Neither the Defendant nor the City of Hammond possesses records from the Lake County Assessor from 1914 showing that 4409 Johnson was built as a single family home.

8. No Zoning Ordinance existed in 1914 that would have required the Johnson Avenue property to be built as a single family home or that would have restricted the Property from being built as a multi-unit dwelling.

9. The testimony of Thomas Suroviak, a prior owner of 4409 Johnson, indicated that he had personal knowledge that 4409 Johnson had been a three-unit building since at least 1946.

10. In fact, . . . the City possessed more than mere knowledge of how 4409 Johnson Avenue was being utilized when Thomas Suroviak built the external staircase for which he obtained a permit; Hammond gave Suroviak an ultimatum, as he explained during his testimony: either build a second entrance/exit or the property could no longer be utilized as a three-unit rental.

\*\*\*

Conclusions of Law

\*\*\*

3. The Findings and Order of the Board contain significant factual errors, misstatements and/or misrepresentation such that the findings of fact are erroneous and the Board's conclusions of law are improper.

4. Based on the evidence, . . . the Board's finding that 4409 Johnson was built as a single family property, is arbitrary capricious, unsupported by the evidence and in excess of statutory authority.

5. The property at 4409 Johnson Avenue constitutes a legal use.

6. The Johnson Avenue property was either built as a three-unit building or constitutes a non-conforming legal use through the issuance of permits by the City of Hammond.

7. Based on the clear and convincing evidence that no permit

records exist that show how 4409 Johnson was initially constructed, coupled with the fact that no zoning ordinance existed in the City of Hammond in 1914 that would have required the Property to be a single family home, the Board findings in paragraph 4 [] that the Lake County Assessor's record show that 4409 Johnson was built as a single family home is arbitrary, capricious and unsupported by the evidence.

\*\*\*

18. The City's factual finding that the non-existence of permits to convert, or otherwise, for the Johnson Avenue property dates back to 1914 is arbitrary, capricious and unsupported by the evidence. Because Hammond possesses no records of permits predating 1923, it cannot properly claim that it has reviewed records back to 1914.

19. The City of Hammond, and in particular, the Building Commissioner, are subject to duties pursuant to Hammond Zoning Ordinance ("HZO") §§ 26.10 and 26.20 to ensure a building is in compliance with the zoning requirements when a permit is issued.

20. The *Advisory Bd. of Zoning Appeals v. Foundation for Comprehensive Mental Health, Inc.*, 497 N.E.2d 1089 (Ind. [Ct.] App. 1986) applies herein, as does its holding that both structure and use are to be considered when a building permit is issued and that, when Hammond issued the permits with full knowledge of use and structure of a property, it is estopped from denying a property owner the current usage of said property.

Appellant's App. pp. 16-23. Hammond now appeals.

## Standard of Review

The Alcantars have not filed an appellee's brief responding to the Board's appeal of the Lake Circuit Court's order reversing the Board's order directing the Alcantars to convert the property from a three-unit rental to a single-family

home. "When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review." *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014). We may reverse if the Board establishes prima facie error, which is error at first sight, on first appearance, or on the face of it. *See id*. at 351-52. Still, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Mikel v. Johnston*, 907 N.E.2d 547, 550 n. 3 (Ind. Ct. App. 2009).

[13] Indiana Code section 4-21.5-5-14 governs court review of an administrative decision. That section provides that a court may provide relief only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *See also Equicor Development, Inc. v. Westfield–Washington Township Plan Commission*, 758 N.E.2d 34, 36-37 (Ind. 2001); *Dep't of Natural Res. v. Ind. Coal Council, Inc.*, 542 N.E.2d 1000, 1007 (Ind. 1989) ("[A]n administrative act is arbitrary and capricious only where it is willful and unreasonable, without consideration and in disregard of the facts and circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion").

[14] "The burden of demonstrating the invalidity of the agency action is on the party . . . asserting invalidity." I.C. § 4-21.5-5-14(a). In reviewing an administrative

decision, a court is not to try the facts de novo or substitute its own judgment for that of the agency. Ind. Code § 4-21.5-5-11. This statutory standard mirrors the standard long followed by our courts. *See e.g. Town of Beverly Shores v. Bagnall*, 590 N.E.2d 1059, 1061 (Ind. 1992). Where the trial court's factual findings are based on a paper record, our review is de novo. *See Equicor Development*, 758 N.E.2d at 37. However, here, the trial court held an evidentiary hearing; we therefore defer to the trial court to the extent its factual findings derive from that hearing. *See Id.*

## Discussion and Decision

Zoning ordinances are tools that governments rightfully use to restrict the use of real property. *See Benjamin Crossing Homeowners' Ass'n, Inc. v. Heide*, 961 N.E.2d 35, 40-41 (Ind. Ct. App. 2012). Indiana case law provides that the right of a municipality to enact zoning restrictions is subject to vested property interests acquired prior to enactment of zoning ordinances. *See Jacobs v. Mishawaka Bd. of Zoning Appeals* 182 Ind.App. 500, 395 N.E.2d 834, 836 (1979). An ordinance prohibiting any continuation of an existing lawful use within a zoned area is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power. *Town of Avon v. Harville*, 718 N.E.2d 1194, 1197 (Ind. Ct. App. 1999), *trans. denied*. The phrase "non-conforming use" is defined as a use of premises which lawfully exists prior to the enactment of a zoning ordinance and which is allowed to be maintained or continued after the effective date of the ordinance although it does not comply with the use restrictions applicable in the area. *Jacobs*, 395 N.E.2d at 835-36. A person who

claims a legal non-conforming use has the burden of establishing his claim. *Harville*, 718 N.E.2d at 1198. Once a legal non-conforming use has been established, the burden of proving the termination of that use by abandonment or discontinuance rests on those opposing the non-conforming use. *Id.*

[16] Initially, we address the trial court's erroneous conclusion that the Board was estopped from denying the Alcantars the current use of the property as a three-unit rental. In general, a governmental entity cannot be estopped by the unlawful acts of public officials. *Cablevision of Chicago v. Colby Cable Corp.*, 417 N.E.2d 348, 354 (Ind. Ct. App. 1981). If estoppel were applied against a governmental official, "a dishonest, incompetent or negligent public official could wreck the interests of the public." *Id.*

[17] However, the prohibition is not absolute. *Id.* at 356. This court has recognized equitable estoppel can be applied against a governmental entity when "the public interest" will be threatened. *Advisory Board of Zoning Appeals of Hammond v. Foundation for Comprehensive Mental Health, Inc.*, 497 N.E.2d 1089, 1092 (Ind. Ct. App. 1986); *see also Cablevision of Chicago*, 417 N.E.2d at 357. In contrast, the sole interest threatened here belongs to the Alcantars. Only the Alcantars profit from using the property as a three-unit rental, especially given the poor condition of that property. Because no "public interest" has been threatened, it was error for the trial court to apply the doctrine of equitable estoppel against Hammond.

[18] Next, we observe that the Alcantars bore the burden of establishing the invalidity of the Board's order directing them to convert the property to a single-family residence and of proving that their use of their property is a legal non-conforming use. *See* I.C. § 4-21.5-5-14(a); *Harville*, 718 N.E.2d at 1198. Therefore, to prove that their three-unit rental property is a legal non-conforming use, the Alcantars had to establish that the property was a three-unit rental property before the area was zoned single family residential. *See Jacobs*, 395 N.E.2d at 835-36.

[19] The Alcantars presented evidence that the property was used as a three-unit rental at least since the late 1940s. However, the Alcantars failed to prove that the property was a three-unit rental prior to the Hammond zoning ordinance that took effect in 1931.

[20] Although the Alcantars maintained that their property could have been built as a three-unit rental, they failed to present any evidence to support that claim. Hammond presented evidence that in the building commissioner's opinion, the internal hallways and property's ceiling heights establish that the property was built as a single-family residence in 1914. The Board also cited a record from the Lake County Assessor's office listing the property as a single-family home with a half-finished attic and a full basement. Ex. Vol, Defendant's Ex. D. The building commissioner also testified that even if the property had been built as a three-unit rental property, it was not built according to the building codes in effect in 1914 for multi-unit family residences. Tr. p. 276.

This evidence supports the Board's conclusion that the property has "never been a legal non-conforming use." Appellant's App. p. 41. Because evidence in the record supports this finding, and given the considerable deference courts are required to give to agency rulings, the trial court erred when it concluded that the Board's conclusion was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or otherwise not in accordance with law.

For all of these reasons, we conclude that the Board established prima facie error, and we reverse and remand with instructions to the trial court to reinstate the Board's order directing the Alcantars to convert the property back to a single-family home.

Reversed and remanded for proceedings consistent with this opinion.

Baker, J., and Bailey, J., concur.