## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 08 2019, 8:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Daniyal M. Habib
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Barry Atwell, <br> *Appellant-Defendant,* <br><br> v. <br><br> City of Indianapolis, <br> *Appellee-Plaintiff.* | October 8, 2019 <br><br> Court of Appeals Case No. <br> 18A-OV-2978 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Cynthia J. Ayers, Judge <br><br> Trial Court Cause No. <br> 49D04-1804-OV-15254 |

**Tavitas, Judge.**

# Case Summary

[1] Barry Atwell appeals the trial court's finding that he committed a zoning violation, as well its entry of an injunction and imposition of a fine against him and in favor of the City of Indianapolis (the "City"). We affirm.

# Issue

[2] Atwell raises two issues on appeal, which we restate as follows:

> I. Whether the trial court erred in rejecting Atwell's claimed defense that his maintenance of poultry on his D-5-zoned premises was a legally established non-conforming use.

> II. Whether Atwell's act of raising and keeping a poultry flock on his premises was a lawful accessory use.

# Facts

[3] The instant case stems from the City's allegation that Atwell raised and kept poultry on his residential premises in violation of a Marion County zoning ordinance. In February 1999, Atwell purchased one-third of an acre of real property (the "premises") in Indianapolis. At the time, the premises were zoned, "Dwelling District Five" ("D-5") in the Revised Code of the Consolidated City of Indianapolis and Marion County ("Revised Code"). The zoning designation of the premises has not since changed. In 2013, Atwell and his wife, Sherri, began to raise a flock of poultry, comprised of chickens, turkeys, and roosters (the "flock"), on the premises.

[4] In 2016, the City revised its ordinances to permit landowners to raise no more than twelve chickens and one rooster in D-5 zoning areas. *See* Revised Code, Table 743-306-3 ("No more than twelve chickens, quail, pigeons, and ducks are allowed on a Marion County lot of any size."). The 2016 revision did not lift the prohibition on raising and keeping turkeys in D-5 zoning areas. At the time of the 2016 zoning revision and beyond, Atwell maintained multiple roosters and turkeys on the premises, as well as more than twelve chickens. At its largest, Atwell's flock exceeded fifty-five birds.

[5] On August 2, 2017, the City issued a notice of violation to Atwell. Following an inspection, the City determined that Atwell repeatedly failed to remedy the alleged violation. On April 20, 2018, the City filed a complaint in which the City alleged that Atwell violated Section 743-306(V) of the Revised Code by conducting activity not permitted in a D-5 zoning area—namely, "keeping turkeys, more than one rooster, and more than 12 chickens" on the D-5-zoned premises. *See* Appellant's App. Vol. II p. 9. The City sought a fine, a permanent injunction, and an order requiring Atwell to remedy the violation.

[6] On August 24, 2018, Atwell filed his answer and asserted, as an affirmative defense, that his maintenance of poultry on the premises was a "legally established non-conforming use." *Id*. at 13. The trial court conducted a hearing on August 29, 2018. At the hearing, the parties stipulated that Atwell presently maintained more than twelve chickens, more than one rooster, and multiple turkeys on the premises. Witnesses for the City testified to the foregoing facts. In his defense, Atwell testified that, because he already

maintained his flock before the City enacted the 2016 ordinance, his use of the premises—for keeping poultry for personal use and consumption—qualified as a legally established non-conforming use.

[7] After the hearing, the trial court found that the City proved the alleged violation by a preponderance of the evidence; ordered the parties to submit an agreed proposed order; and invited the parties to request a hearing, if the parties failed to reach an agreement. On October 24, 2018, after the parties failed to reach an agreement, the trial court conducted a post-trial hearing and entered its final order wherein the trial court: (1) found that the City proved the violation by a preponderance of the evidence; (2) ordered Atwell to reduce the size of his flock to not more than twelve chickens and not more than one rooster, and also to remove all turkeys from the premises; (3) required Atwell to allow a City inspection of the premises on November 27, 2018; (4) scheduled a compliance hearing for November 28, 2018; (5) assessed a $75.00 fine; and (6) permanently enjoined Atwell from exceeding specified limits on poultry and animals on the premises. Atwell timely filed a motion to correct error; the trial court denied the motion on December 7, 2018 but stayed enforcement of the final order pending our resolution of this appeal.

## Analysis

[8] Atwell argues that the trial court erred in finding the zoning violation, in enjoining him from maintaining poultry and animals on the premises in excess of specified limits, and in assessing the fine. Specifically, Atwell maintains that he had a valid defense to the alleged zoning violation.

[9] The interpretation of a zoning ordinance is a question of law that is reviewed de novo. *County of Lake v. Pahl*, 28 N.E.3d 1092, 1102-03 (Ind. Ct. App. 2015). The ordinary rules of statutory construction apply in interpreting the language of a zoning ordinance. *Id.* at 1103. Words are to be given their plain, ordinary, and usual meaning, unless a contrary purpose is shown by the statute or ordinance itself. *Id.* Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the ordinance. *Id.* Furthermore, zoning regulations that inhibit the use of real property are in derogation of the common law and are strictly construed. *Id.* The courts construe a zoning ordinance to favor the free use of land and will not extend restrictions by implication. *Id.*

[10] Also, regarding the entry of an injunction against Atwell, the grant or denial of an injunction is discretionary, and we will not reverse unless the trial court's action was arbitrary or constituted a clear abuse of discretion. *Dierckman v. Area Planning Comm'n of Franklin Cnty., Ind.,* 752 N.E.2d 99, 104 (Ind. Ct. App. 2001), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law. *Id.*

## *I. Applicable Ordinances*

[11] Section 740-1002 of the of the Consolidated City of Indianapolis and Marion County ("Revised Code") authorizes the metropolitan development commission of Marion County to seek injunctive and monetary relief against

any person or entity for violating a Marion County zoning ordinance or land use regulation. Pursuant to Section 740-1005.A.7:

> [i]t shall be unlawful for any person who is the owner . . . of, or who has a possessory interest in, real property located in Marion County to cause, suffer or allow any of the following civil zoning violations to occur on such property: . . . The conduct of any activity in a zoning district, not specifically enumerated as a permitted primary or accessory use in that zoning district, and which activity has not been legally established by a currently valid variance, special exception or other approval grant.

[12] Prior to 2015, the City prohibited landowners from raising and keeping poultry in D-5 zoning areas as provided under Revised Code Section 743-207 (2010). At the time, Section 731-207 described the "statement of purpose" and "permitted uses" applicable to D-5 zoning areas as follows:

> Statement of purpose. The D-5 district is intended for areas of medium intensity single-family residential development. The application of this district will be found within urban, built-up areas of the community, and where all urban public and community facilities, and services are available. The district is not intended for suburban use. * * * * *
>
> (a) Permitted D-5 uses. The following uses shall be permitted in the D-5 district. Only one primary use shall be permitted per lot, All uses in the D-5 district shall conform to the D-5 development standards (section 731-207(b)) and the dwelling district regulations of section 731-200.
>
> (1) Primary uses.

a. Single-family dwelling, including a manufactured home as regulated in section 731-222.

b. Two-family dwelling.

c. Group home, as defined in section 731-102 and as regulated in section 731-200(a)(8).

d. Religious use, as regulated in section 731-224.

(2) Temporary uses, as regulated in section 731-218.

(3) Accessory uses, as regulated in section 731-219. [The stated accessory uses listed in the 2010 version of the Revised Code, did not include the raising and keeping of poultry].

(4) Home occupations, as regulated in section 731-220.

Appellant's App. Vol. II p. 36. Thus, in 2013, Section 731-207 of the Revised Code did not include the raising and keeping of poultry as being within the stated purpose, permitted uses, or accessory uses of D-5 premises; however, the City permitted landowners to raise and keep poultry on premises that were designated as D-A zoning areas.[1]

---

[1] Atwell's premises have never been designated a D-A zoning area. D-A zoning areas are: "inten[ded] to provide for the production, keeping or maintenance . . . of poultry and poultry products; the breeding or grazing of animals . . . ." Revised Code, Section 731-201; Appellant's App Vol. II p. 37. Permitted uses of D-A zoning areas include "grazing or feeding of livestock for animal increase or value increase." *Id*.

In a 2016 amendment to the Revised Code, pursuant to Section 743-306(W)[2] of the Revised Code, the City revised the zoning rules to permit landowners in D-5 zoning areas to maintain no more than twelve chickens and one rooster[3] on D-5 premises. The 2016 revision did not lift the prohibition on raising and keeping turkeys in D-5 zoning areas.

## II. Legally Established Nonconforming Use

Atwell argues that the trial court erred in: (1) failing to recognize his claimed defense that he engaged in a legally established non-conforming use of the premises; and (2) finding that he committed a zoning violation. Zoning ordinances are tools that governments rightfully use to restrict the use of real property. *Board of Public Works of City of Hammond v. Alcantar*, 47 N.E.3d 1276, 1282 (Ind. Ct. App. 2016). "[A] municipality's right to enact zoning restrictions is subject to the vested property interests acquired prior to the enactment of the ordinances." *Id*. An ordinance that prohibits "continuation of an existing lawful use within a zoned area is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power." *Id*.

"[A] non-conforming use is . . . a use of premises which lawfully exists prior to the enactment of a zoning ordinance and which is allowed to be maintained or

---

[2] This Section was codified at Section 743-306(V) when the City filed its complaint.

[3] Section 743-306.W.5 provides that "[r]oosters are limited to one per lot and between dusk to dawn the rooster must be kept inside an enclosed coop or similar fully-enclosed structure."

continued after the effective date of the ordinance although it does not comply with the use regulations applicable in the area." *Alcantar*, 47 N.E.3d at 1282). *See Metro. Dev. Com'n v. Worth Outdoor, LLC*, No. 19A-OV-212, slip op. at 2 (Ind. Ct. App. August 16, 2019) ("[A] nonconforming use is a use of property that lawfully existed prior to the enactment of a zoning ordinance that continues after the ordinance's effective date even though it does not comply with the ordinance's restrictions.").

[16] A person who claims a legal non-conforming use has the burden of establishing the claim. *Alcantar*, 47 N.E.3d 1282. "The method for establishing a non-conforming use is to prove that the [lawful] use began prior to the applicable zoning ordinance." *Metr. Dev. Com'n v. Schroeder*, 727 N.E.2d 742, 750 (Ind. Ct. App. 2000). Thus, to prevail, it was incumbent upon Atwell to establish that, before the 2016 ordinance revision took effect, he *lawfully* raised and kept poultry on his D-5-zoned premises. Atwell cannot carry his burden.

[17] The record establishes that it was not lawful, under the Revised Code, to keep and raise poultry in D-5 zoning areas when Atwell began raising his poultry flock in 2013. When Atwell began maintaining poultry on the premises in 2013, the raising and keeping of poultry was not a lawful use of D-5-zoned property according to Section 731-207, which prescribed the stated purpose of D-5 zoning areas and listed both permitted and accessory uses and did not include the maintenance of poultry. Consequently, Atwell cannot carry his burden of demonstrating a legally established non-conforming use because his use of the premises, before the 2016 zoning ordinance, was already unlawful.

[18]     In light of the foregoing, we find that: (1) the trial court did not err in finding that Atwell failed to establish a legally established nonconforming use; and (2) the grant of the injunction was neither an abuse of discretion nor arbitrary. *See Dierckman*, 752 N.E.2d at 104.

### III. Accessory Use

[19]     Next, Atwell contends that maintaining a poultry flock was a lawful accessory use of the premises before the enactment of the 2016 zoning ordinance. The State counters—and we agree—that this issue is waived. As the State argues:

> At trial[,] Atwell argued that he had a legal nonconforming use based only on the *existence* of his property use. [ ] Atwell never argued the *lawfulness* of his property use at the time, and thus never made the argument that his flock was a lawful accessory use. A reading of the trial transcript shows that neither Atwell, nor his counsel, mentioned the phrase "accessory use" at any point. The only mention of an accessory use was a cursory mention by a witness for the City; and although it would have been improper for Atwell to raise the issue for the first time in his Motion to Correct Error, he does not do so in that motion either.

City's Br. p. 18. Atwell failed to raise the "lawful accessory use" issue before the trial court; thus, we are unable to address it. *See Breneman v. Slusher*, 768 N.E.2d 451, 463 (Ind. Ct. App. 2002) (providing that issues raised for the first time on appeal are waived).

## Conclusion

[20]     Atwell failed to prove that he had a legally established non-conforming use for the premises, and the trial court did not err in finding that Atwell's maintenance

of a poultry flock on D-5 premises was a zoning violation.  The trial court did not abuse its discretion in imposing the permanent injunction.  Atwell's "lawful accessory use" argument is waived.  We affirm.

[21]    Affirmed.

Brown, J., and Altice, J., concur.