## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2020, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Grant M. Reeves
Barada Law Offices LLC
Rushville, Indiana

ATTORNEY FOR APPELLEES
GERALD A. MCCORMICK AND
CHRISTOPHER THAYER

Andrew M. Sumerford
Meils Thompson Dietz & Berish
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE CITY
OF RUSHVILLE

Julie A. Newhouse
Tracy J. Newhouse
Rushville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

City of Rushville Board of
Zoning Appeals, by Joe Rathz in
his capacity as Chairman,

*Appellant-Defendant,*

v.

Gerald A. McCormick and
Christopher Thayer,

*Appellees-Plaintiffs,*

and

August 31, 2020

Court of Appeals Case No.
20A-PL-212

Appeal from the Rush Circuit
Court

The Honorable Matthew D.
Bailey, Special Judge

Trial Court Cause No.
70C01-1810-PL-392

The City of Rushville, Indiana,
by Michael Pavey in his capacity
as Mayor,[1]

*Appellee-Defendant.*

**Shepard, Senior Judge.**

[1] In this interlocutory appeal, the city of Rushville Board of Zoning Appeals appeals the trial court's order setting aside its decision that Christopher Thayer had abandoned a non-conforming use of property he had owned. We conclude that the evidence before the Board was sufficient under the standards applicable to judicial review. We thus reverse the trial court.

## Facts and Procedural History

[2] The city of Rushville enacted its zoning ordinance in 1974. Among other things, the ordinance defined "Mobile Home Park" as "[a]n area of land on which two or more mobile homes are regularly accommodated with or without charge including any building or other structure, fixture or equipment that is used or intended to be used in providing that accommodation." Appellant's App. Vol. III, p. 29 (1974 Zoning Ord. § 5.1.21).

---

[1] Although counsel for the city of Rushville entered their appearance, they did not file a brief or participate in this appeal. Yet, the city is still a party on appeal. *See* Ind. Appellate Rule 17(A) ("A party of record in the trial court or Administrative Agency shall be a party on appeal.").

[3] In 1982, the then-owners of the piece of property at issue in this case successfully petitioned to have the property rezoned to a "Mobile Home Park" classification. At that time, the 1974 ordinance, and its corresponding definition of "Mobile Home Park," was still in effect.

[4] In approximately 1999, Christopher Thayer purchased the property. Thayer operated a mobile home park on the property, which had space for up to seven mobile homes.

[5] In 2006, the city of Rushville adopted a new zoning ordinance. Under the 2006 ordinance, Thayer's property was rezoned to the "Central Business District" classification, in which a mobile home park was not a permitted use. Appellant's App. Vol. IV, p. 55 (2006 Zoning Ord. § 6-101-4 H.). However, because the property was lawfully being used as a mobile home park at the time of the rezoning, it could remain a mobile home park as a pre-existing, non-conforming use under the new zoning classification. The 2006 ordinance defined "Mobile Home Park" as "[a]n area of land under single ownership used for the parking of two (2) or more occupied mobile homes." *Id.* at 23 (2006 Zoning Ord. § 6-101-3 B.).[2]

[6] By the end of January 2013, Thayer had removed all but one mobile home from the property. The property has contained only one mobile home since 2013.

---

[2] Although the city again adopted a new zoning ordinance in 2009, the definition of "Mobile Home Park" remained unchanged. Appellant's App. Vol. V, p. 24 (2009 Zoning Ord. § 6-101-3 B.).

[7] Effective January 2016, Rushville again adopted a new zoning ordinance. This ordinance did not contain the term "Mobile Home Park" but rather used the term "Manufactured Home Park," which it defined as "[a]n area of land under single ownership used for the parking of two (2) or [m]ore occupied manufactured homes." Appellant's App. Vol. VI, p. 18 (2016 Zoning Ord. Art. II B.).

[8] In November 2017, Thayer sold the property on contract to Gerald McCormick, who intended to operate a mobile home park on the property. However, in May 2018, the city of Rushville Department of Planning and Zoning sent McCormick a letter informing him that, due to a several-year lapse in the use of the property as a mobile home park as defined in the Rushville zoning ordinance, the property could no longer be used as such without a use variance or rezoning.

[9] McCormick appealed to the Board. At the public hearings on the matter, evidence was presented, including the testimony of Thayer, who described his efforts to obtain tenants for the park thusly: "one time . . . I put flyers up," "[I] would tell the girls at the utility office," and "I had a good friend that was plant manager . . . [and k]new a lot of people." Appellant's App. Vol. II, p. 80 (Tr. BZA Hrgs.). Thayer also explained that he "got a little too stringent" with his standard for an acceptable tenant and admitted that he "didn't devote enough energy" to the park. *Id.* at 80, 82 (Tr. BZA Hrgs.). The Board affirmed the decision of the Department of Planning and Zoning and issued findings and conclusions.

McCormick then petitioned for judicial review. The trial court issued its findings and conclusions determining the Board's decision was erroneous and remanding the case to the Board for further proceedings. This Court subsequently granted the Board's petition for interlocutory appeal.

## Issue

Whether the trial court properly reversed the Board's decision.

## Discussion and Decision

When reviewing a zoning board's decision, this Court applies the same standard as the trial court. *Stiller Props., LLC v. Floyd Cty. Bd. of Zoning Appeals*, 144 N.E.3d 727 (Ind. Ct. App. 2020). That is, we may not substitute our judgment for that of the zoning board, and we may neither weigh evidence nor assess witness credibility. *Id.*

Instead, we are limited to determining whether the zoning board's decision was based upon substantial evidence. *House of Prayer Ministries, Inc. v. Rush Cty. Bd. of Zoning Appeals*, 91 N.E.3d 1053 (Ind. Ct. App. 2018), *trans. denied*. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Snyder v. Kosciusko Cty. Bd. of Zoning Appeals*, 774 N.E.2d 550, 552 (Ind. Ct. App. 2002), *trans. denied* (2003). "Evidence is considered substantial if it is more than a scintilla and less than a preponderance." *Id.* A decision not supported by substantial evidence is arbitrary, capricious, or an abuse of discretion. *House of Prayer Ministries, Inc.*, 91 N.E.3d 1053. There is a presumption that determinations of a zoning board,

with expertise in the area of zoning issues, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion. *Id.*; *see* Ind. Code § 36-7-4-1614(d)(1) (2011) (judicial relief from zoning decision may be granted only if court determines that party seeking relief has been prejudiced by decision that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law).

[14] We initially note that a "non-conforming use" is a use of a premises which lawfully exists prior to the enactment of a zoning ordinance and which is allowed to be maintained or continued after the effective date of the ordinance although it does not comply with the use restrictions applicable in the area. *Bd. of Pub. Works & Safety of City of Hammond v. Alcantar*, 47 N.E.3d 1276 (Ind. Ct. App. 2015). The party claiming a legal non-conforming use has the burden of establishing such, and, once that use has been established, the burden of proving the termination of that use by abandonment or discontinuance rests on the party opposing the non-conforming use. *Id.*

[15] The parties agree that from 1982 to 2006 the property was lawfully used as a mobile home park and that, when it was rezoned to the Central Business District classification in 2006, it continued to be used as a mobile home park as a pre-existing, non-conforming use. Thus, the Board bore the burden of establishing the abandonment of the use of the property as a mobile home park.

The Board began by deciding which ordinance and corresponding definition of "Mobile Home Park" was applicable to the use of the property. It determined that the 1974 ordinance applies:

> 4. At the hearing, the BZA heard discussions regarding which ordinance would apply to govern the use in question. This situation arose because the applicable sections of the zoning ordinance were amended at numerous times. The BZA believes that the most applicable ordinance defining the use would be the ordinance governing such use at the time it was created.

> 5. Here, the use was created in August of 1982, and the ordinance in effect at that time would have been the June 18, 1974, Ordinance (the "74 Ordinance").

Appellant's App. Vol. II, p. 23 (BZA's Findings and Conclusions).

The 1974 ordinance defined "Mobile Home Park" as: "An area of land on which *two or more mobile homes* are regularly accommodated with or without charge including any building or other structure, fixture or equipment that is used or intended to be used in providing that accommodation." Appellant's App. Vol. III, p. 29 (1974 Zoning Ord. § 5.1.21) (emphasis added). Applying this definition, the Board concluded:

> 7. Under this definition, the use of the Property as a mobile home park lapsed as a pre-existing non-conforming use when all but one mobile/manufactured home was removed prior to 2013. The definition of "Mobile Home Park" requires that two or more mobile homes be regularly accommodated under the 74 Ordinance. The BZA finds the failure to maintain two or more mobile homes on the Property for a period of at least 5 years (far

more than any minimum or reasonable time) means the pre-existing non-conforming use has lapsed under any reasonable interpretation for at least the following reasons:

> a. More than 50% of the original structures on the Property were removed (leaving only one of many previous mobile/manufactured homes).

> b. To the extent that the removal of the additional mobile homes brought the Property closer to conformity with the current ordinance (though not into compliance), it may not now be changed back to a use that is even more non-conforming.

> c. Definitionally, there was a change of use when the use of the Property failed to meet the definition of a "Mobile Home Park."

Appellant's App. Vol. II, p. 23 (BZA's Findings and Conclusions).

[18] Additionally, the Board determined that, while its decision was primarily based on the 1974 ordinance, the non-conforming use would have lapsed under any of the possible definitions because they all require two or more occupied mobile/manufactured homes. *See id.* at 23-24 (BZA's Findings and Conclusions).

[19] Finally, the Board addressed McCormick's argument that Thayer had not abandoned the use of the property because he had continued to maintain his mobile home park license through the State. However, in light of the evidence of Thayer's voluntary removal of all but one mobile home on the property

without replacement and only minimal effort to market the property to secure new tenants, the Board determined that merely maintaining the State license by paying a fee did not overcome the evidence of abandonment or lapse of use. *See id.* at 24-25 (BZA's Findings and Conclusions).

[20] McCormick argues that the Board erred by basing its decision on the 1974 ordinance. The Board determined the 1974 ordinance applies because it was the governing ordinance in effect in 1982 when the property was rezoned to the "Mobile Home Park" classification. Additionally, the 1974 ordinance was still in effect and governing the use of the property as a mobile home park when it was grandfathered in as a pre-existing, non-conforming use in 2006 when the property was rezoned to Central Business District. A non-conforming use is a use which lawfully exists prior to the enactment of a zoning ordinance and which is allowed to be continued after the effective date of the ordinance although it does not comply with the use restrictions of the new ordinance. *Bd. of Pub. Works & Safety of City of Hammond*, 47 N.E.3d 1276. Accordingly, the 1974 ordinance is the only ordinance under which this property *lawfully existed* as a mobile home park. From 2006 to the present, the property merely was permitted to continue to be used as a mobile home park as a non-conforming use.

[21] The zoning ordinance in effect in Rushville at the time this issue arose is the 2016 ordinance. In Article XI, entitled Non-Conforming Uses, that ordinance provides:

3. Abandonment or discontinuance. If a nonconforming use other than a single-family residential use is discontinued or terminated for a period of 12 months, any future use of the structure, or land shall conform to the provisions of this ordinance.

Appellant's App. Vol. VI, p. 100 (2016 Zoning Ord. Art. XI C.). Similarly, prior to 2016, the 2006 ordinance provided:

C. DISCONTINUANCE OR ABANDONMENT

When a nonconforming use of land, structure, or land and structure in combination is discontinued or abandoned for twelve (12) consecutive months, the structure, land, or structure and land in combination shall not thereafter be used except in conformance with regulations of the district in which it is located.

Appellant's App. Vol. IV, p. 158 ( 2006 Zoning Ord. § 6-101-10).

[22] The non-conforming use here, as defined by the governing ordinance, is "[a]n area of land on which *two or more mobile homes* are regularly accommodated with or without charge including any building or other structure, fixture or equipment that is used or intended to be used in providing that accommodation." Appellant's App. Vol. III, p. 29 (1974 Zoning Ord. § 5.1.21). Pursuant to either ordinance, abandonment occurs after the use is discontinued

for a period of 12 months, and the property at issue here contained only one mobile home for a period of more than five years.[3]

## Conclusion

[23] The Board carefully considered whether the non-conforming use had been abandoned, and we conclude the Board's decision rested upon substantial evidence. Therefore, the trial court erred by setting aside the Board's decision. We reverse and remand for proceedings consistent with this opinion.

[24] Reversed and remanded.

Crone, J., and Pyle, J., concur.

---

[3] Assuming, arguendo, that either the 2006 or the 2016 zoning ordinance was the definitional governing ordinance, we observe that the result would be the same as under the 1974 ordinance. *See* Appellant's App. Vol. IV, p. 23 (2006 Zoning Ord. § 6-101-3 B.) (defining "Mobile Home Park" as "[a]n area of land under single ownership used for the parking of two (2) or more occupied mobile homes."); Appellant's App. Vol. VI, p. 18 (2016 Zoning Ord. Art. II B.) (defining "Manufactured Home Park" as "[a]n area of land under single ownership used for the parking of two (2) or [m]ore occupied manufactured homes.").